# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SERENA RICHTER, | ) | CIVIL ACTION NO. |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| AUTOTRADER.COM, INC., | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>COMPLAINT</u>

## I.     PRELIMINARY STATEMENT

By this action, Plaintiff, Serena Richter, seeks wage loss and liquidated damages, as well as attorneys' fees and costs, as a result of being terminated by Autotrader.com, Inc. in retaliation for taking leave covered under the Family and Medical Leave Act ("FMLA").  Defendant's actions in this regard violate the FMLA, 29 U.S.C. §2615(a); 29 C.F.R. §825.220(c).  Plaintiff also seeks wage loss, compensatory and punitive damages, and attorneys' fees and costs for being terminated by Defendant because of her disability and as a result of the Defendant not granting Richter's request for a reasonable accommodation, in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12112, and the Pennsylvania Human Relations Act, as amended, 43 P.S. §955(a).  Additionally, Richter seeks wages earned, attorneys' fees, and liquidated damages as a result of Defendant's improper withholding of wages Richter earned, in violation of the Pennsylvania Wage Payment and Collection Law, 43 P.S. §260.5.

## II.     JURISDICTION

1.      This court has jurisdiction of this matter by virtue of 28 U.S.C. § 1331, in that this is a civil action wherein the matter in controversy arises under the laws of the United States. This court also has jurisdiction of this matter under 28 U.S.C. § 1367, in that this is a civil action of which this federal district court has original jurisdiction, and some of Plaintiff's claims are brought under Pennsylvania state law, which is related to the federal claim in this action in that they form part of the same case or controversy under Article III of the Constitution of the United States.

2.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b), in that this is a civil action in which jurisdiction is not founded solely on diversity of citizenship and the acts constituting a substantial part of the events and omissions giving rise to the claims occurred in the Western District of Pennsylvania.

3.      On August 27, 2014, Plaintiff filed a timely Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"), in which she alleged disability discrimination for failure to accommodate and her termination.  Richter dual filed the charge with the Pennsylvania Human Relations Commission ("PHRC").

4.      On February 12, 2016, Plaintiff received her Notice of Right to Sue letter from the EEOC.

## III.     PARTIES

5.      Plaintiff, Serena Richter, is an adult female who resides at 44 Union Street, Uniontown, PA 15401. At the time of the incident complained of in this lawsuit and presently, she was and is a citizen of the Commonwealth of Pennsylvania and the United States of America.

6.      Defendant, Autotrader.com, Inc., is a Delaware corporation, operating an internet auto classifieds marketplace and consumer information website, with business headquarters located at 3003 Summit Boulevard, Suite 200, Atlanta, GA 30319.

## IV.      STATEMENT OF CLAIM

7.       Richter began working for Defendant on July 9, 2007 as an Advertising Consultant, based in Fayette County, Pennsylvania, with a sales territory extending to parts of Pennsylvania, West Virginia, and Maryland.

8.      On June 16, 2011, while on an authorized vacation day, Richter sustained serious physical injuries as a passenger in a motor vehicle accident, as a result of which she required ongoing medical and psychological treatment.

9.      Immediately following the accident, Richter first was on short-term disability and then FMLA leave with Defendant in order to recover from the serious physical and emotional injuries she sustained. Her FMLA leave expired sometime in the middle of October 2011.

10.      Despite Richter's need for time to recover, during her short term disability and/or FMLA leave, her manager, Jason Cox, repeatedly questioned her following the accident as to when she would return to work and asked her to work from home, even though she was not permitted to do so by her doctor.  Cox went so far as to visit her house the week following the accident to pressure her to return.

11.      Following this treatment by Cox, Richter felt compelled to go to her doctor and request a release to try to work from home.  Against his judgment, her doctor issued her a release and Richter worked from home for approximately three weeks.  Immediately thereafter, Richter went back on short term disability at the urging of her doctor.

12.     As a result of the accident, Richter suffered chronic shoulder and neck arthritis due to whiplash, as well as back injuries, a concussion and six broken teeth.  She also sustained severe post-traumatic stress disorder.  Immediately upon returning from her leave, Richter shared with Defendant and specifically her managers that she had the aforementioned physical and psychological injuries.

13.     After returning to work on approximately October 24, 2011 following her FMLA leave, Richter received a call from Cox to meet him at the Holiday Inn in Uniontown.  She was taken to a room with Matt Gentzel present and a representative of Defendant's Human Resources Department on speaker phone.  They proceeded to interrogate her regarding the status of her clients and her performance.  She was told by Cox that if she had been more "on the ball" and had a better rapport with her clients 45 to 60 days prior to her accident, business would not have suffered during her absence.

14.     Defendant then presented Richter with a "Final Written Warning" ("FWW") on November 11, 2011, although she had never previously been given any discipline (aside from one warning for asking an allegedly inappropriate question in a meeting on a commissions topic years before that), written or verbal.  Moreover, up until that date Richter had received only favorable reviews of her work performance and consistently earned substantial commissions based on her performance and productivity.

15.      The FWW allegedly was based on "a number of incidents that took place starting in April of 2011 that have recently come to light."

16.     Richter successfully rebutted the allegations set forth in the FWW with evidence that included correspondence from her assigned clients, and her employment continued.

17.     In approximately May of 2012, Richter submitted a transfer request in writing to the Regional Sales Manager (Jeff Shepard) for an open position in the Carolinas.  Richter sought the transfer to recover from her injuries in a warmer climate, because of a better support network she had in that area and to avoid passing the site of the accident on a near daily basis. Defendant denied that request.  Matt Gentzel told Adrienne Kirkman, the Regional Sales Director, that Richter's request was denied because Shepard wouldn't hold Richter accountable and "she's trying to get out of work."  Richter gave Defendant a detailed explanation as set forth in this paragraph as to why she requested the transfer.

18.     From the end of 2011 and/or beginning of 2012 through the middle of June 2013, Richter continued her employment and performed up to par.

19.     On June 14, 2013, false and malicious criminal charges of homicide by vehicle and DUI were filed by the District Attorney of Fayette County, Pennsylvania against Richter.

20.     Richter first learned of the filing of the charges on a public website during the week of June 17, 2013.  On the same day that she learned this information, Richter immediately notified her manager, Mark McDermott, that the charges had been filed and a warrant issued for her arrest.

21.     Also on that same day, Richter requested and received McDermott's assistance in driving her to a sales call scheduled for that date in his vehicle so that Defendant would not potentially be embarrassed by her possible arrest on the client's premises.  Richter's concern was that an arrest could occur should a police officer happen to see her vehicle there before she had the opportunity to turn herself in, which she did immediately after the sales meeting.

22.      Thereafter, Richter's employment continued as before and her performance remained strong.

5

23.     By December of 2013, Richter's physical injuries from the accident had been exacerbated due to her arthritis which was aggravated by cold weather and overuse, and she made a request to Mark McDermott to have her territory adjusted to minimize the distances she was required to drive.  This adjustment was necessary so that she could undergo the therapy recommended by her physician.  Defendant denied Richter's request for an accommodation.

24.     Shortly thereafter, Richter again requested and was approved for FMLA leave, which ran from January 2, 2014 through March 26, 2014 and further short-term disability leave to extend through April 30, 2014.  Once her cortisone shots were no longer working, during this FMLA leave period, Richter was receiving traction treatments for five days per week for three months.

25.     On March 27, 2014, upon expiration of the approved FMLA leave, Defendant terminated Richter's employment and rescinded the previously approved short-term disability leave.

26.     The only explanation provided by Defendant for the termination of Richter's employment was the pendency of the false criminal charges filed against her and her alleged failure to report them.

27.     The alleged basis for Richter's termination clearly was pretextual in that Richter immediately reported the charges to her manager, Mark McDermott, the charges were openly discussed by several of Defendant's managers in the months following their filing, and the changes were reported in local newspapers.  One of the discussions occurred between Les Hayman and Patricia Hennon at the Rivers Casino in May or June of 2013.

28.     Moreover, since there had been no adjudication of the charges, neither Plaintiff's driving privileges, as required for performance of her duties, nor Plaintiff's business relationships with her customers were affected by the charges.

29.     Furthermore, upon information and belief, other similarly situated non-disabled employees who weren't on FMLA had committed DUI and other driving-related offenses of which Defendant was aware and were not terminated by Defendant.  In one situation, an individual (Kristen Dunst) lost her driving privileges as a result of a DUI and in another, an individual (Harley Davidson) used drugs while driving in the course of employment, yet neither person was terminated.

30.     On January 8, 2015, following a trial, Richter was acquitted of the criminal charges on the grounds that there was not sufficient quantity or quality of evidence to sustain the charges.

31.     As a result of Defendant's aforementioned conduct, Plaintiff has suffered loss of past and future income, substantial mental anguish, emotional distress, and damage to her professional reputation.

32.     Moreover, as a result of Defendant's termination of her employment and insurance benefits, Plaintiff was prevented from obtaining the care and treatment necessary for recovery from the injuries, which injuries thus were aggravated.

33.     Additionally, upon information and belief, Defendant never paid Richter the entire sum of commissions she had earned and to which she was entitled during her last year of employment.

## V.      CLAIMS FOR RELIEF

## COUNT I – VIOLATION OF FAMILY AND MEDICAL LEAVE ACT – RETALIATION

34.     Plaintiff incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

35.     Autotrader.com, Inc. intentionally retaliated against Richter because she took FMLA qualifying leave by terminating Richter, in violation of 29 U.S.C. §2615(a) and 29 C.F.R. §825.220(c).

36.     Autotrader.com, Inc.'s decision to terminate Richter was based upon Richter's FMLA-qualifying leave, as evidenced by the timing of the events described above, Plaintiff's treatment before and after her first FMLA leave, and the clearly pretextual explanation provided for her termination.

37.     Richter has been directly harmed as a result of these violations as is fully set forth above.

## COUNT II - VIOLATION OF ADA - TERMINATION

38.     Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

39.     Defendant has intentionally and willfully engaged in a series of unlawful acts, practices, policies, and/or procedures in discriminating against Richter with respect to compensation, terms, conditions, or privileges of employment in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12112.

40.     Defendant regarded Richter as disabled.

41.     Defendant's unlawful acts, practices, policies, and/or procedures in employment, specifically by terminating Richter, were induced by its intent to discriminate against Richter on the basis of her disability and/or perceived disability.

42.     Richter has been directly harmed as a result of Defendant's violations as is fully set forth above.

## COUNT III - VIOLATION OF PHRA - TERMINATION

43.     Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

44.     Defendant has intentionally and willfully engaged in a series of unlawful acts, practices, policies, and procedures in discriminating against Richter with respect to compensation, terms, privileges, or conditions of employment, in violation of the PHRA, as amended, 43 P.S. § 955(a).

45.     Defendant regarded Plaintiff as disabled.

46.     Defendant's unlawful acts, practices, policies, and/or procedures in employment, specifically by terminating Richter, were induced by its intent to discriminate against Richter on the basis of her disability and/or perceived disability.

47.     Richter has been directly harmed as a result of these violations as is fully set forth above.

## COUNT IV - VIOLATION OF ADA - FAILURE TO ACCOMMODATE

48.     Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

49.     Defendant has intentionally and willfully engaged in a series of unlawful acts, practices, policies, and/or procedures in discriminating against Richter with respect to

compensation, terms, conditions, or privileges of employment in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12112.

50.     Defendant's refusal to make a reasonable accommodation sought by Richter in December 2013 for her disability was induced by its intent to discriminate against Richter on the basis of her disability and/or perceived disability.

51.     Richter has been directly harmed as a result of these violations as is fully set forth above.

## COUNT V - VIOLATION OF PHRA - FAILURE TO ACCOMMODATE

52.     Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

53.     Defendant regarded Plaintiff as disabled.

54.     Defendant has intentionally and willfully engaged in a series of unlawful acts, practices, policies, and procedures in discriminating against Richter with respect to compensation, terms, privileges, or conditions of employment, in violation of the PHRA, as amended, 43 P.S. § 955(a).

55.     Defendant's refusal to make a reasonable accommodation sought by Richter in December 2013 for her disability was induced by its intent to discriminate against Richter on the basis of her disability and/or perceived disability.

56.     Richter has been directly harmed as a result of this violation as is fully set forth above.

## COUNT VI - VIOLATION OF PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW

57.     Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

58.     Upon information and belief, Defendant has unlawfully withheld wages earned by Richter which are due and payable to her, in violation of 43 P.S. § 260.5.

59.     Richter is unable to calculate the exact amount owed because Richter does not have access to the information because it is solely in the possession of Defendant.

60.     Richter has been directly harmed as a result of this violation as is fully set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court will:

(a)     Assume jurisdiction herein;

(b)     Declare Defendant's conduct to be unlawful and an intentional violation of Plaintiff's rights;

(c)     Award Plaintiff wage loss damages, including back pay, front pay,  lost fringe and other benefits of employment, including health benefits;

(d)     Award Plaintiff wages earned that are due and payable under the Wage Payment and Collection Law;

(e)     Award Plaintiff compensatory and punitive damages under the ADA and compensatory damages under the PHRA;

(f)     Reinstate Plaintiff to her position with Defendant (in the alternative to front pay);

(g)     Award Plaintiff liquidated damages under the FMLA and Wage Payment and Collection Law;

(h)     Award Plaintiff costs and attorneys' fees; and

(i)     Grant such other relief as the Court deems just and appropriate.

**JURY TRIAL DEMANDED**

Respectfully Submitted,


<u>s/ David B. Spear</u>
David B. Spear
PA Id. No. 62133

Nick Kennedy
PA Id. No. 317386

Minto Law Group, LLC
603 Stanwix Street, Suite 2025
Pittsburgh, PA 15222
(412) 201-5525